Argued January 14, affirmed as modified February 24,
reconsideration denied March 26, petition for
review denied April 15, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF

NOLAN, *Appellant,* and NOLAN (No. 86105),
*Respondent.*

532 P2d 35

*Harry V. Benson* and *Steven E. Benson,* Portland, argued the cause and filed the briefs for appellant.

*Charles Robinowitz,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and LEE, Judges.

LEE, J.

The wife appeals from a decree of dissolution, and argues that the circuit court's failure to provide for the allocation of outstanding debts rendered its division of property inequitable, and further contends the court erred when it failed to award her either support or attorney fees.

This four-year marriage was the second for each party. The wife (age 48) has custody of five children from her former marriage, husband (age 46) is presently responsible for the support of two sons. Wife is employed and earns approximately $500 per month; she also receives payments of $535 per month from the Social Security Administration for the support of her children. Although husband's income for the year preceding the filing of the petition was in

excess of $10,000, he lost his job shortly thereafter and was, at the time of the hearing below, living on unemployment compensation. Both parties enjoy satisfactory health.

Wife brought with her to the marriage a house which was free and clear, an unencumbered automobile, and savings in excess of $12,000. Husband's initial contribution consisted of a small equity in a boat and proceeds from the sale of a home which did not exceed $6,000. Following the marriage, wife's house was sold and the proceeds—some $30,000—was applied toward the purchase of a larger residence located on eight acres of land. This abode was, at the time of the hearing, subject to a mortgage of approximately $35,000 payable at $300 per month.

During the course of the marriage the Nolans encountered serious financial difficulties, and after dissipating their own liquid assets they procured a bank loan of $4,000 for consolidating debts of which loan $3,500 remained unpaid at the time the parties separated. Wife's father had also provided a loan of $12,500 at the time the new home was purchased, of which $5,000 remained owing at the time of the hearing.

The circuit court decree awarded wife the family residence subject to the mortgage thereon and the equity in an automobile the parties were in the process of acquiring. Husband was awarded a $6,000 judgment against wife secured by a lien on the home, payable within two years of the decree. Each party was permitted to retain personal property in possession; neither was awarded attorney fees, but wife was granted judgment for her costs. No provision

was made for the payment of the accumulated family debts.

In attempting to formulate a property division which will be "just and proper in all the circumstances" (ORS 107.105(1)(e)), the relevant facts for consideration are:

" ' " * * * The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living. * * *" ' " *Stettler v. Stettler,* 2 Or App 119, 121, 467 P2d 130 (1970), quoting *Siebert v. Siebert,* 184 Or 496, 502-503, 199 P2d 659 (1948).

■ This court noted in *Hardenburger and Hardenburger,* 18 Or App 267, 525 P2d 179, Sup Ct *review denied* (1974):

"The mere fact that one spouse brings to a marriage greater assets than the other does not itself upon dissolution entitle that spouse to the return in effect of such assets before the remaining property is divided. *Vetter and Vetter,* 98 Adv Sh 1453, 16 Or App 634, 520 P2d 364 (1974). *While it may be a factor to be considered along with many others in determining what 'division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances'* (ORS 107.105(1)(e)), that is all it is." (Emphasis supplied.)

Where—as here—litigants seeking to terminate a financially disastrous marriage of short duration have essentially comparable ability to provide for their own support subsequent to the dissolution of the relationship, we believe that usually each party ought

to be awarded remaining properties in a fashion roughly proportionate to their respective contributions.

■ As noted above, wife brought to this marriage assets having substantially greater value than those contributed by husband. Her "losses" resulting from the termination of the union were also proportionately greater. Therefore, the decree of the circuit court should be modified by elimination of the husband's $6,000 judgment secured by lien against the home which we believe would likely precipitate a forced sale, thereby aggravating, even further, wife's financial position. Elimination of the judgment diminishes but does not eradicate the disparity between the losses of these parties which may be attributed to the termination of the marriage.

■■ While a court may properly consider the indebtedness of the parties in determining an appropriate property division and may, in fact, attempt to determine *as between the parties* their liability for outstanding debts—*Thom v. Laird et al.,* 205 Or 465, 471, 289 P2d 418 (1955)—the state of the record at bar compels a finding that no such apportionment would be fitting here. Neither party chose to introduce evidence below which might have enabled us to determine whether either the bank loan or that from wife's father had been jointly or individually assumed.[1] Lacking the ability to discern the parties'

---

[1] With respect to the $5,000 owed to wife's father, study of the record reveals sparse evidence. Wife indicated that funds used to buy the new house included "the money *my father loaned us*", thus suggesting that the debt may have been jointly assumed. Later, however, the following exchange took place:

"Q   Did you borrow any money to invest in this property [residence acquired after marriage]?

"A   *We* borrowed the down payment from my father.

legal obligations with reference to the bank and wife's father's loan, we do not attempt any allocation of these

"Q How much was that?
"A $12,500.

"Q Do you still owe him anything on that?
"A *I* still owe him $5,000." (Emphasis supplied.)

Taken as a whole, wife's comments compel the conclusion that she was not consciously attempting to reflect either her or husband's legal status by use of specific pronouns. It is impossible on this record to determine who is or is not responsible for the debt.

Evidence relating to the $3,500 debt owing the bank is equally limited. Wife's testimony includes these comments:

"Q Do you have any outstanding loans?
"A Yes, First National, Lloyd Center.

"Q How much was that originally?
"A The original loan was $4,000.

"Q What was the purpose of the loan?
"A To try to catch up some of the bills.

"Q What is the balance owing?
"A $3,500.38.

"Q Who has made the payments on those?
"A I have."

This is slight evidence, if any, that she was individually responsible for the debt. Although the circuit court apparently intended wife to continue making payments on the loan, it appears to have concluded that the parties were *jointly* responsible to the bank:

"MR. BENSON: What about the payment of the indebtedness to the First National Bank?

"THE COURT: I am sure he is obligated on that. I will not make any order on that. They are both obligated, whoever is obligated, they both accepted it. It can be provided that she pays—that it is credited against the $6,000.

"MR. SAXON: I would object to that.

"THE COURT: I consider that in the determination of the division of the property. That is going to have to be her obligation."

We can only conclude that the individual legal obligations of the parties are not discernible from the record and neither party chose to develop facts relating thereto.

debts. We regard the most equitable action in this regard to be no action.

■ Considering those factors enumerated in ORS 107.105(1)(c),[2] we are satisfied that no award of support was warranted in this case. *See Dodge and Dodge,* 19 Or App 363, 527 P2d 750 (1974); *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974). Neither did the court abuse its discretion in declining to grant wife an award of attorney fees. *Costanzo v. Costanzo,* 4 Or App 284, 478 P2d 440 (1970).

Affirmed as modified. Costs to neither party.

---

[2] ORS 107.105(1)(c) provides:

　"* * * * *

　"(A)　The duration of the marriage;

　"(B)　The ages of the parties;

　"(C)　Their health and conditions;

　"(D)　Their work experience and earning capacities;

　"(E)　Their financial conditions, resources and property rights;

　"(F)　The provisions of the decree relating to custody of the minor children of the parties;

　"(G)　The ages, health and dependency conditions of the children of the parties, or either of them; and

　"(H)　Such other matters as the court shall deem relevant."