IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

CHARLES T. WEST, JR.,        )
                                 )
        Plaintiff,       )    TC-MD 160254N
                                 )
     v.                )
                                 )
DEPARTMENT OF REVENUE,    )
State of Oregon,          )
                                 )
        Defendant.    )    **FINAL DECISION**[1]

Plaintiff appeals Defendant's Conference Decision Letter and Notice of Assessment, dated April 8, 2016, for the 2012 tax year. The parties submitted cross-motions for summary judgment and responses. The matter is now ready for decision.

## I. STATEMENT OF FACTS

Plaintiff alleges that he is entitled to deduct as alimony two payments made to SELCO Credit Union (SELCO). The parties have stipulated to certain facts and exhibits, which are incorporated herein.

Plaintiff divorced his spouse in Lane County, Oregon in October, 2012. (Ex A at 1.) After a trial, the Lane County Circuit Court issued a General Judgment of Dissolution of Marriage (Judgment of Dissolution) dissolving the marriage and ordering Plaintiff to, among other things, assume two debts owed to SELCO. (*Id*. at 4.) The first was a "line of credit debt in the sum of approximately $370," and the second was a debt "due to [SELCO] Visa with a balance of approximately $4,700." (*Id*. at 1.) Plaintiff's ex-spouse was the sole "authorized

---

[1] This Final Decision incorporates without change the court's Decision, entered April 13, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

signer" on both SELCO accounts. (Stip Facts at 1.)

The section of the Judgment of Dissolution ordering Plaintiff to assume the two SELCO debts was entitled "Debts and Liabilities." (Ex A at 4.) That section is notably distinct from other sections in the Judgment of Dissolution entitled "Property Division" and "Spousal Support."[2] (Ex A at 2-5.) The section entitled "Spousal Support" ordered Plaintiff to make monthly support payments to his ex-spouse and includes the following provision: "[p]ayments shall terminate upon Husband's death or Wife's death, whichever shall first occur." (*Id*. at 5.) The section entitled "Debts and Liabilities" includes no such provision.

During the trial, the judge explained the court's distribution of the "marital debts" as follows: "Wife is ordered to assume the $[16,000],[3] roughly, in the second mortgage, and Husband is ordered to assume the $4,727 in the [SELCO] Visa, * * * and the $369 line of credit." (Ex B at 12.) The judge later explained, "The second mortgage is her debt. That's why he got all the other debt." (*Id.* at 20.)

Plaintiff paid both debts in full during the 2012 tax year, charging each to his personal SELCO Visa account. (Stip Facts at 1.) Plaintiff included both payments in calculating his alimony deduction for tax year 2012. (Ex C at 3.) Defendant issued a Notice of Deficiency for tax year 2012, stating that Plaintiff's payment of the SELCO debt was not deductible under IRC section 71(b)(1) because the obligations listed under the "Debts and Liabilities" heading in Plaintiff's Judgment of Dissolution are "a nontaxable division of marital property." (Ex C at 3.) Plaintiff appealed to the Department of Revenue, where a conference officer reached the same

---

[2] Plaintiff was also ordered to make monthly spousal support payments, the deductibility of which is not in dispute.

[3] The transcript from the proceeding quotes the amount of the second mortgage as $6,200, but this appears to be a typo by the court reporter. Elsewhere, the second mortgage is listed as approximately $16,000. (*See* Ex A at 3, 5; Ex B at 3, 11.)

conclusion and upheld the adjustment. (Ex E at 3.)

## II. ANALYSIS

The only issue before the court is whether Plaintiff may claim an alimony deduction for his 2012 payment of the SELCO debt.

The burden of proof falls up the party seeking affirmative relief. ORS 305.427.[4] Plaintiff is the party seeking affirmative relief and must prove his claim by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). The parties filed cross-motions for summary judgment. Summary judgment is appropriate when "the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C.

In analyzing the law governing allowable deductions for alimony payments, the court is guided by the legislature's expressed intent "to make the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code (IRC) relating to the measurement of taxable income of individuals * * *." ORS 316.007. Generally, transfers of property between spouses incident to a divorce are not taxable events and do not give rise to deductions or recognizable income. *Estate of Goldman v. Comm'r*, 112 TC 317, 322 (1999), *aff'd sub nom Shutter v. Comm'r*, 242 F3d 390 (10th Cir 2000); IRC § 1041; ORS 107.105(3)

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 version.

("This transfer by judgment * * * is not a taxable sale or exchange").[5] However, amounts received as alimony are taxable to the recipient and deductible by the payor in the year paid. IRC §§ 71, 215(a).

Plaintiff's Judgment of Dissolution lists the SELCO debts in the section entitled "Debts and Liabilities" among other equitable distributions of the couple's marital debt. The Judgment of Dissolution has an altogether separate section governing alimony payments entitled "Spousal Support." The document thus "reflects the substance of a nonalimony designation" for the SELCO debts. *Goldman*, 112 TC at 318. The characterization of payments in a divorce or separation instrument is not dispositive. *See Baker v. Comm'r*, 79 TCM (CCH) 2050 (2000), 200 WL 656708 at *4 (US Tax Ct) (finding that "the labeling of the payments as a 'property settlement,' with nothing more, is not a clear, explicit, and express direction that the payments * * * are not deductible"); *cf. Goldman*, 112 TC at 323 (considering the heading "Further Payments for Property Division" relevant to the character of payments in a divorce instrument.) As Plaintiff correctly asserts, "[t]his court has previously held that the labels the parties attach to the payments are not as compelling as their characteristics." (Ptf's Cross-Mot Summ J at 3) (quoting *Aday v. Dept. of Rev.*, TC-MD 050739A, WL 167494 at *1 (Or Tax M Div Jan 17, 2006). However, the way the Judgment of Dissolution is organized indicates, at a minimum, that the SELCO debts are not in the same category as spousal support.

Further, during the divorce trial, the judge ordered Plaintiff to assume the SELCO debts, explaining that these marital debts would be distributed to Plaintiff in order to offset an otherwise unequal debt of a second mortgage on real property awarded to Plaintiff's ex-spouse. The equation is thus made clear: on one side of the exchange is the encumbered home, a piece of

---

[5] A transfer of property is "incident to the divorce" if it either "(1) occurs within 1 year after the date on which the marriage ceases, or (2) is related to the cessation of the marriage." IRC §1041(c).

marital property, while on the other side are the marital debts, distributed to offset the second mortgage on the property. "The second mortgage is her debt. That's why he got all the other debt." (Ex B at 20.) That explanation shows that the SELCO debts more closely resemble part of an equitable property division than alimony.

IRC section 71 sets an objective standard for distinguishing the two types of payments frequently made pursuant to divorce settlements: property division payments (which are not deductible) and spousal support or alimony payments (which are deductible). *Goldman*, 112 TC at 322. Alimony is defined as "any payment in cash if—

> "(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> "(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> "(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> "(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."

IRC § 71(b)(1). Each of those elements must be satisfied before a payment qualifies as alimony. *See Sa'd v. Comm'r*, 104 TCM (CCH) 784 (2012), 2012 WL 6599015 at *3 (US Tax Ct).

A.    *Payment Received By or On Behalf Of Spouse*

Plaintiff's payments to SELCO satisfy the first prong of the section 71(b)(1) test because they were made to a third party "on behalf of" Plaintiff's ex-spouse. The Ninth Circuit has held that, "[g]enerally, a transfer is considered to have been made 'on behalf of' someone if it satisfied an obligation or a liability of that person." *Ingham v. U.S.*, 167 F3d 1240, 1244 (9th Cir 1999), quoting *Arnes v. U.S.*, 981 F2d 456, 459 (9th Cir 1992). Plaintiff's payment to SELCO

satisfied his ex-spouse's obligation to pay SELCO the debt in her name.

Payments made to a third party on behalf of a spouse may qualify as alimony payments if the payments are made pursuant to a divorce instrument and meet all the other requirements under IRC section 71(b)(1). Treas Reg § 1.71-1T (1984).[6] However, such payments may also qualify as non-taxable transfers under IRC section 1041, which covers transfers "incident" to divorce. The Treasury Department has issued a temporary regulation providing that, in certain circumstances, "transfers of property to third parties on behalf of a * * * former spouse" qualify for nonrecognition under section 1041(a)(2). Temp Treas Reg § 1.1041—1T at Q-9, A-9 (2003). The regulation supplies an example in which the transfer to a third party, like the one in this case, is required by a divorce or separation instrument. Such a transfer "will be treated as made directly to the nontransferring spouse (or former spouse) and the nontransferring spouse will be treated as immediately transferring the property to the third party." Temp Treas Reg § 1.1041-1T, A-9 (2003); *see also* Treas Reg 1.71-1T, Q&A #6[7]; *see, e.g., Blatt v. Comm'r*, 102 TC 77, 80 (1994). The fact that Plaintiff made the payments on behalf of his former spouse is not conclusive on the question of whether those payments were alimony.

B.     *Designation of Payments as Non-taxable*

As the parties agree, criteria (B) of the section 71(b)(1) alimony test is met. The Judgment of Dissolution is silent as to whether the payments of those debts are deductible. *See*

---

[6] Although this regulation appears to be current, its interpretation is in part obsolete after Congressional amendments to the statute. "In the Tax Reform Act of 1986, Congress amended § 71(b)(1)(D) by deleting the parenthetical requirement that the agreement specifically provide for termination upon the death of the payee spouse." *Hoover v. Comm'r*, 102 F3d 842, 846 (6th Cir 1996) (citing Pub L No 99-514, tit. XVIII, subtit. A, § 1843(b), 100 Stat. 2085, 2853 (1986)). That statement is directly at odds with Q & A numbers 11 and 12 in the cited regulation, which concern the requirement that the divorce decree state that payments terminate upon death in order to be treated as alimony. The court cites the regulation for a separate proposition having concluded that the cited portion is still valid law.

[7] *See supra* n6. The court has concluded that the cited portion of the regulation is still valid law.

*Richardson v. Comm'r*, 125 F3d 551, 556 (7th Cir 1997) (articulating that "the instrument must contain a clear, explicit and express direction" that conflicts with characterizing the payments as alimony).

C.      *Separate Households*

Criteria (C) is also met.  The parties do not dispute that Plaintiff and his former spouse were not sharing a household during the time the payments were made.

D.      *Liability to Make Payments After Death*

The fourth requirement of section 71(b)(1) is that the liability to make the payments end upon the payee spouse's death.  That requirement "is central to Congress's intended distinction between support and property settlements." *Hoover*, 102 F3d at 846 (citing HR Rep No 98-432, Part II, at 1496 (1984)).  In analyzing section 71(b)(1)(D), federal courts first look at the terms of the divorce instrument and then, if it they are unclear, to state law to determine whether the payments will necessarily terminate upon the payee's death.  *See Muniz v. Comm'r*, 661 Fed Appx 1027, 1029 (2016) ("Therefore, when conducting the § 71(b)(1)(D) inquiry, we first look for termination language in the instrument creating the obligation, but if 'the order does not expressly state that the payments cease upon the death of the payee, we must examine the state law to determine whether the death of the recipient terminates the payment order' " (citations omitted)).  If, by operation of state law, the payments will necessarily terminate upon payee's death, they may still qualify as deductible alimony.  *Hoover*, 102 F3d at 846.

1.      *Liability after payee's death under the Judgment of Dissolution*

The parties disagree regarding whether Plaintiff would remain liable for the SELCO payments in the event of Plaintiff's ex-spouse's death in part because the "Debts and Liabilities" section of the Judgment of Dissolution is silent on the question.  Plaintiff argues that the

'terminate upon death' provision in the "Spousal Support" section of the Judgment of Dissolution also applies to the "Debts and Liabilities" section, thus absolving Plaintiff of any duty to pay SELCO after the death of his ex-spouse. (Ptf's Cross-Mot Summ J at 2.) The court is unpersuaded that the 'terminate on death' provision extends to cover the SELCO payments.

In arguing that Plaintiff's obligation to SELCO would be enforceable beyond his ex-wife's death, Defendant cites *Webb v. Commissioner*. (Def's Resp at 1.) In that case, a divorce decree provided that the husband pay the wife certain amounts in order to balance the court's division of the couple's marital property. The court held that the language of the decree "[u]nquestionably * * * created a liability which would have been enforceable by [the wife's] estate had she died after the execution of the agreement but before the payments were actually made." *Webb v. Comm'r*, 60 TCM (CCH) 1024 (1990), 1990 WL 155448 (US Tax Ct).

Both the trial judge and the Judgment of Dissolution characterized the debts as part of an equitable distribution of marital assets and liabilities. Thus, even though Plaintiff's debt payments to SELCO were not lump sum payments made directly to the ex-spouse like in *Webb*, the court finds the comparison persuasive. However, the language of the Judgment of Dissolution alone does not resolve the question of the enforceability of Plaintiff's obligations.

2.      *Liability after payee's death under state law*

Plaintiff argues that he has no personal liability for the SELCO debts under Oregon law, maintaining that the debts are in his ex-spouse's name and that "debts incurred during the marriage by one spouse are not the other spouse's responsibility." (Ptf's Cross-Mot Summ J at 2.) If Plaintiff had failed to pay the SELCO debts before his ex-spouse's death, he contends, neither SELCO nor his ex-spouse's estate would have any recourse against Plaintiff. (Ex D at 2.) Defendant asserts that if Plaintiff had failed to pay the SELCO debt before his ex-spouse's death,

his obligation to pay the debt would have continued. (Ex C at 3.)

The court rejects Plaintiff's contention that he is not personally liable for the SELCO debts. While generally true that in Oregon, "[n]either husband nor wife is liable * * * for the separate debts of each other," an Oregon court may, as part of its authority to divide property,[8] divide the debts that the parties incurred during their marriage. ORS 108.020; *In re Marriage of Shlitter*, 188 Or App 277, 283, 71 P3d 154, 157 (2003), citing *McInnis and McInnis,* 62 Or App 524, 527, 661 P2d 942 (1983). "As with assets acquired during the marriage, the debts must be divided equitably." *Shlitter*, 188 Or App at 283 (citation omitted). For purposes of division in a marital dissolution action in Oregon, courts distinguish marital debts from debts owed by only one of the parties. *In re Marriage of Morton*, 252 Or App 525, 541, 287 P3d 1227 (2012). In making that distinction, courts focus not on the person in whose name the debt was incurred, but on the use to which it was put. *Id.* (citations omitted); *see also* ORS 108.040 (both husband and wife are jointly liable for "expenses of the family").

During Plaintiff's divorce trial, the judge explicitly distinguished marital debt from personally-incurred debt as she equitably divided the couple's assets and liabilities. The judge stated that the couple's "[m]arital debt" included "[$]16,000, which is roughly the amount of the second mortgage[,] * * * [$]13,000 Pentagon Federal Credit Union debt," and the SELCO debts in question. (Ex B at 11-12.) Alternatively, the judge assigned the responsibility for non-marital debts, including debts that Plaintiff incurred after the couple had separated, to the spouse who had incurred the debt, indicating that that type of debt was "not a marital asset." *Id.*

ORS 107.115(1) provides that a judgment of dissolution "gives the court jurisdiction to award, *to be effective immediately*, the relief provided" by the provisions of the judgment

---

[8] *See* ORS 107.405 (giving dissolution courts "full equity powers").

(emphasis added). The rights and obligations contained in the judgment of dissolution thus become "effective for all purposes" the moment a judgment of dissolution is filed. ORS 107.105(3); *see also In re Marriage of Cortese*, 260 Or App 291, 300, 317 P3d 340 (2013) ("[O]nce the petition for dissolution is filed, a married couple's property interests are at once brought into question and all of the marital assets are subject to an equitable apportionment by the trial court"). In this case, at the moment the Judgment of Dissolution was filed, Plaintiff became liable for the SELCO debts, which were explicitly characterized as an equitable apportionment of marital debt. The death of Plaintiff's ex-spouse would have no legal effect on that liability.

III. CONCLUSION

Based on careful review of the law and evidence, the court concludes that Plaintiff's payments to SELCO do not meet the IRC section 71 definition of alimony and are therefore not allowable deductions under section 215. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for tax year 2012 is denied.

Dated this ____ day of May 2017.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on May 2, 2017.*